ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| NÉCTOR ROBLES ABRAHAM, IRMA MORALES GARCÍA, Y LA SOCIEDAD LEGAL DE GANANCIALES POR ESTOS COMPUESTA; E INVERSIONES ROMONT, S.E., representada por NÉCTOR ROBLES ABRAHAM<br><br>Parte Apelante<br><br><br>v.<br><br><br>MUNICIPIO AUTÓNOMO DE HUMACAO, HON. ALCALDE MARCELO TRUJILLO PANISSE; OFICINA DE PLANIFICACION DE HUMACAO, DIRECTORA ANILDA FERNÁNDEZ VEGA<br><br>Parte Apelada | KLAN202400596 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br><br><br>Caso Núm.: HU2019CV00302<br><br><br>Sala: 206<br><br>Sobre:<br>Incautación Reglamentaria, Expropiación a la Inversa; Nulidad de Revisión por Falta de Facultades y/o Competencias Municipales; Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 16 de julio de 2024.

Compareció ante este Tribunal la parte apelante, el Sr. Néctor Robles Abraham (en adelante, el "señor Robles Abraham"), la Sra. Irma Morales García (en adelante, la "señora Morales García"), la Sociedad Legal de Gananciales compuesta por ambos e Inversiones Romont, S.E. (en adelante, "Inversiones") (en adelante y en conjunto, los "Apelantes"), mediate recurso de apelación presentado el 17 de junio de 2024. Nos solicitaron la revocación de la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Humacao (en adelante, el "TPI"), el 29 de abril

de 2024, notificada y archivada en autos al día siguiente. Mediante dicho dictamen, el foro primario desestimó la "**Demanda**" incoada por los Apelantes, por entender que el Plan de Ordenación Territorial del Municipio de Humacao predomina sobre la zonificación que establezca la Junta de Planificación de Puerto Rico.

Por los fundamentos que expondremos a continuación, se *revoca* la *Sentencia* apelada.

**I.**

El caso de autos se originó el 8 de marzo de 2019, con la presentación de una "**Demanda**" por parte de los Apelantes en contra del Municipio Autónomo de Humacao, (en adelante, el "Municipio") y la Oficina de Planificación de dicho ayuntamiento (en adelante, "Oficina de Planificación") (en adelante y en conjunto, los "Apelados"). Mediante la misma, alegaron que son dueños de varias propiedades, cuyas descripciones leen como sigue:

> A. ---R[Ú]STICA: Parcela número Cuatrocientos Siete (407) en el Barrio Río Abajo del término municipal de Humacao, Puerto Rico, con cabida de CERO PUNTO DOS MIL TRESCIENTAS DIEZ MILESIMAS DE CUERDA (0.2300 cds), equivalentes a NOVECIENTOS TRES PUNTO OCHENTA Y OCHO METROS CUADRADOS (903.88 mc), en lindes por el NORTE, con la parcela número Cuatrocientos Seis (406) de la comunidad; por el SUR, con la parcela Cuatrocientos Dos (402) de la comunidad; por el ESTE, con la Calle Nueve (9) de la comunidad y por el OESTE, con terrenos de la comunidad para futuro desarrollo y la parcela número Quinientos Veintidós (522) de la comunidad. --- Enclava una estructura de madera para fines residenciales y que consta de sala, comedor, cocina, dos (2) cuartos dormitorios, baño y balcón. Este solar ha sido reducido por la expropiación de Noventa y Ocho punto Setenta y Tres metros cuadrados (98.73mc).

> B. ---R[Ú]STICA: Parcela número Quinientos Veintidós (522) en el plano de parcelación de la Comunidad Rural Río Abajo del término municipal de Humacao, Puerto Rico, con cabida superficial de CUATRO MIL DOSCIENTOS CINCUENTA Y CINCO PUNTO DIECISIETE METROS CUADRADOS (4, 255.17mc). En lindes por el NORTE, con parcela Quinientos Veintidós guión "A" (522-A) de la comunidad. Por el SUR, con parcela número Cuatrocientos Dos (402), Cuatrocientos Siete (407), Cuatrocientos Ocho (408), Cuatrocientos Nueve (409), y Cuatrocientos Diez (410) de la comunidad. Por el ESTE, con las parcelas Cuatrocientos Once (411), Cuatrocientos Doce (412) y la Calle Diez (10) de la comunidad. Por el OESTE, con terrenos propiedad de Fernando Pagán.

> C. ---R[Ú]STICA: Predio de terreno en el Barrio Río Abajo del término municipal de Humacao, Puerto Rico, con cabida de

TRES PUNTO MIL CINCUENTA Y CINCO MILESIMAS DE CUERDA (3.1055 cds), equivalentes a DOCEMIL DOSCIENTOS CINCO PUNTO SEIS MIL SEISCIENTOS CINCUENTA Y NUEVE METROS CUADRADOS (12,205.6659 mc), en lindes por el NORTE, con la Urbanización Buso y la Corporación de Renovación Urbana y Vivienda de Puerto Rico, por el SUR, con los solares número Uno (1), Dos (2), Tres (3), y área de uso público; por el ESTE, con la Corporación de Renovación Urbana y Vivienda de Puerto Rico, y por el OESTE, con solar número Tres (3) y Urbanización Buso. ---Inscrito al tomo de hoja móvil quinientos veinticinco (525) del Registro de la Propiedad de Humacao, Finca número tres mil setecientos setenta y dos (3,772).

D. ---R[Ú]STICA: Predio de terreno radicado en el Barrio Río Abajo del término municipal de Humacao, Puerto Rico, con cabida de TRECE PUNTO CUATROCIENTOS CUARENTA Y SEIS MILESIMAS DE CUERDA (13.446 cds), equivalentes a CINCUENTA Y DOS MIL OCHOCIENTOS CINCUENTA YUNO PUNTO CINCO CINCO SIETE METROS CUADRADOS (52,851.557 mc). En lindes por el NORTE, en varias alineaciones que totalizan cuatrocientos cuarenta y cuatro punto ochocientos doce metros (444.812 m) con Programas Sociales, por el SUR, en varias alineaciones que totalizan trescientos doce punto ochocientos doce metros (312.812 m)con Urbanización Buso, por el ESTE, en una distancia de ciento veintidós punto seiscientos ochenta y seis metros (122.686 m) con Francisco Pagán; por el OESTE, en varias alineaciones que totalizan cuatrocientos diez punto quinientos treinta y cuatro metros (410.534 m) con Hiram Pérez, con la Calle que le da acceso y con la Urbanización Altura de Buso.

E. ---URBANA: Parcela de terreno marcada con el número UNO (1) en el Plano de Segregación, radicada en el Barrio Río Abajo del Municipio de Humacao, con una cabida superficial de CERO PUNTO SEIS MIL SETENTA Y UNO MILESIMAS DE CUERDA (0.6071 cds), equivalentes a DOS MIL TRESCIENTOS OCHENTA Y SEIS PUNTO TRES MIL SETECIENTOS TREINTA Y SIETE METROS CUADRADOS (2,386.3737 mc), en lindes por el NORTE, con finca principal propiedad de Inversiones Romont, S.E.; por el SUR, con Carretera Estatal Número Tres (3); por el ESTE con el Solar Número Dos (2); y por el OESTE, con el Garaje Shell y la Urbanización Busó.

F. ---URBANA: Parcela de terreno marcada con el número DOS (2) en el Plano de Segregación, radicada en el Barrio Río Abajo del Municipio de Humacao, con una cabida superficial de CERO PUNTO SEIS MIL VEINTICINCO MILESIMAS DE CUERDA (0.6025 cds), equivalentes a DOS MIL TRESCIENTOS SESENTA Y OCHO PUNTO CERO CERO METROS CUADRADOS (2,368.00 mc), en lindes por el NORTE, con finca principal propiedad de Inversiones Romont, S.E.; por el SUR, con Carretera Estatal Número Tres (3); por el ESTE con el Solar Número Tres (3); y por el OESTE, con el Solar Número Uno (1).

G. ---URBANA: Parcela de terreno marcada con el número DOS (2) en el Plano de Segregación, radicada en el Barrio Río Abajo del Municipio de Humacao, con una cabida superficial de CERO PUNTO SEIS MIL VEINTICINCO MILESIMAS DE CUERDA (0.6025 cds), equivalentes a DOS

MIL TRESCIENTOS SESENTA Y OCHO PUNTO CERO CERO METROS CUADRADOS (2,368.00 mc), en lindes por el NORTE, con finca principal propiedad de Inversiones Romont, S.E.; por el SUR, con Carretera Estatal Número Tres (3); por el ESTE con el Solar Número Tres (3); y por el OESTE, con el Solar Número Uno (1). ---Inscrito al folio cuarenta y cinco (45) del tomo cuatrocientos setenta y seis (476), finca número veintiún mil seiscientos dieciséis (21,616) del Registro de la Propiedad de Humacao.

Asimismo, expresaron que adquirieron mediante compraventa, ejecución y subrogación la entidad Mansiones de Palma Real, Inc., convirtiéndose así en titulares de los referidos inmuebles. Indicaron que para realizar dichas transacciones tomaron en consideración el hecho de que las propiedades estaban calificadas como terrenos urbanizables (R-0) y/o residencial intermedio (R-3), puesto que tenían en mente múltiples planes urbanísticos de desarrollo para dichos terrenos. Esbozaron que los Apelados cambiaron la calificación de los terrenos a una de conservación de recursos (CR-2), basándose en la *Revisión Parcial del Plan de Ordenación Territorial de Humacao* del 8 de febrero de 2008 (en adelante, la "Revisión Parcial"). Acentuaron que luego del cambio de calificación, el uso de dichos terrenos varió radicalmente, los privó de todo beneficio o uso productivo de su propiedad y creó un serio impacto en sus intereses. Expresaron que el referido cambio de calificación es nulo porque fue realizado sin notificarles a las partes interesadas. Mencionaron que la *Revisión Parcial* fue promulgada el 8 de febrero de 2008 y que para ese tiempo el Municipio no contaba con las delaciones de las funciones de Jerarquía IV y V, las cuales fueron delegadas el 27 de febrero de 2008 y el 30 de diciembre de 2008, respectivamente.

De igual manera, adujeron que el cambio de calificación restringe la utilización de sus terrenos a un nivel que podría catalogarse una incautación reglamentaria, por lo que procede que se ventile el procedimiento de expropiación a la inversa para que se les otorgara una justa compensación. Expresaron que ya habían transcurrido los ocho (8) años de gracia que la legislación vigente provee para que el estado pueda afectar los derechos propietarios sin una justa compensación, por lo que procede que se efectúe el procedimiento de expropiación a la inversa. Por

último, señalaron que la alegada incautación reglamentaria le causó daños y perjuicios que ascienden a una suma no menor de 5.3 millones de dólares, cuantía que según su postura sería el valor justo y razonable a compensar por la alegada incautación de los terrenos.

A tenor con lo anterior, le solicitaron al TPI que declare "Con Lugar" la "**Demanda**" y ordene a los Apelados al pago de las siguientes cantidades por razón de justa compensación por los inmuebles incautados: (1) 1.8 millones de dólares, a favor del señor Robles Abraham y la señora Morales García y (2) 3.5 millones de dólares a favor de Inversiones. Además, exigió el pago de costas, gastos del litigio y una suma no menor a $15,000.00, por concepto de honorarios de abogado.

Luego de varios trámites procesales impertinentes a la controversia que nos ocupa, el 23 de marzo de 2023, los Apelantes presentaron una "**Solicitud de Sentencia Sumaria**" mediante la cual argumentaron que no existen controversias de hechos materiales y esenciales que impedían la disposición sumaria del caso. En detalle, alegaron que no existía disputa respecto a que: (1) Inversiones es una sociedad especial constituida mediante escritura pública que fue creada para dedicarse al desarrollo de terrenos y construcción en Puerto Rico, (2) el 13 de abril de 1984 la corporación obtuvo de la Junta de Planificación la autorización de la Consulta de Ubicación Número 93-51-0785-JPU en un Distrito Residencial Uno (R-1) y se le autorizó la segregación de tres (3) lotes, (3) la calificación que ostentaba el predio fue la razón primordial para seleccionar estos terrenos para fines comerciales, (4) la Junta de Planificación, mediante la Consulta de Ubicación, consideró la recalificación de los terrenos de Residencial Uno (R-1) a un Distrito de Calificación C-2, (5) sobre las parcelas autorizadas por la Junta de Planificación se construyó en cada una de ellas distintas estructuras para usos comerciales con un Distrito C-2, (6) desde febrero 2008, los predios individuales ostentan la calificación de (CR-2), (7) al momento en que se ejecutó la Consulta de Ubicación procedía la recalificación de los terrenos a un Distrito Comercial Intermedio (C-I), (8) el Municipio no ha cumplido con lo dispuesto en el Plan de Usos

de Terrenos del 2015, adoptado por la Junta de Planificación y no ha reconocido los derechos adquiridos que tienen los Apelantes sobre la consulta de ubicación.

A tenor con lo anterior, le peticionaron al TPI que declarara "Ha Lugar" la "**Solicitud de Sentencia Sumaria**" y ordenara al Municipio de Humacao a que cambie la calificación de las parcelas A, B, C y D de CR-2 a Residencial Intermedio (R-1) y la calificación de las parcelas E, F, y G de CR-2 a Residencial Intermedio (R-1), según descritas y denominadas anteriormente. A la misma, anejó los documentos que, a su juicio, justificaban su postura.

Posteriormente, el 1 de mayo de 2023, los Apelados presentaron una "**Oposición a Moción de Sentencia Sumaria**" (en adelante, "Oposición") a través de la cual sostuvieron que existían controversias sobre hechos importantes y esenciales que impedían resolver el caso de manera sumaria. En específico, señalaron que existe disputa sobre si: (1) el foro primario tenía jurisdicción para atender el caso, (2) el Plan de Ordenamiento Territorial del Municipio de Humacao cumplió con los requisitos establecidos en la ley para calificar los terrenos como CR-2, o si (3) faltaba parte indispensable. Además, indicaron que existía controversia respecto a quiénes son los dueños de las propiedades, ya que no se ha provisto: (1) copia certificada de las escrituras, (2) la fecha en que adquirieron las propiedades, (3) ni las gestiones que llevaron a cabo ante el Municipio. Posteriormente, los Apelantes presentaron una "**Réplica a Oposición de Sentencia Sumaria**", mediante la cual sostuvieron que los Apelados no cumplieron con las disposiciones reglamentarias aplicables para controvertir los hechos esenciales desglosados en su solicitud de sentencia sumaria.

Finalmente, el 29 de abril de 2024, el foro primario emitió una *Sentencia* mediante la cual desestimó la "**Demanda**" incoada por los Apelantes, tras concluir que el Plan de Ordenación Territorial del Municipio de Humacao predominaba sobre la zonificación adoptada por la Junta de Planificación. Posteriormente, el 14 de mayo de 2024, los Apelantes

presentaron una "**Solicitud de Determinaciones de Hecho y Derecho Adicionales**" mediante la cual afirmaron que los Apelados no controvirtieron ninguno de los hechos expuestos en la "**Solicitud de Sentencia Sumaria**", por lo que le solicitaron al TPI que los incluyera en su *Sentencia.* Dicha moción fue declarada "No Ha Lugar" mediante *Resolución* del 22 de mayo de 2024.

Aún inconformes con lo anteriormente resuelto, los Apelantes acudieron ante este Tribunal mediante el recurso de epígrafe, en el que señalaron los siguientes errores:

1) Erró en derecho el Tribunal de Primera Instancia al declarar Con Lugar la Oposición a Moción de Sentencia Sumaria Sin cumplir con las disposiciones de la Regla 36 de Procedimiento Civil.

2) Erró en derecho el Tribunal de Primera Instancia al no aplicar el Plan de Uso de Terrenos de 2015 posterior al Plan de Ordenación Territorial del Municipio de Humacao de 2007, el cual reconoce los derechos adquiridos de la parte demandante por virtud del desarrollo de su terreno, a tenor con la consulta de ubicación; el PUT-2015 establece como política pública que no es expropiación cuando los terrenos están desarrollados o han sido objeto de aprobaciones por consulta de ubicación y otros.

El 28 de junio de 2024, los Apelados presentaron su "**Alegato en Oposición**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal

debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.  Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole,

164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 8; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". Íd., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004)*.* De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335. Esto es, nuestra tarea se restringe a determinar si existe una controversia genuina sobre hechos materiales y esenciales, y si el derecho fue aplicado correctamente. Íd. pág. 335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos,

de intención, propósitos mentales o negligencia. <u>Ramos Pérez v. Univisión de P.R</u>, 178 DPR 200, 2019 (2010); <u>Carpets & Rugs v. Tropical Reps</u>, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. <u>Ramos Pérez v. Univisión de P.R,</u> *supra*, pág. 219.

**B.**[1]

Conforme la exposición de motivos de la derogada Ley Núm. 81-1991, según enmendada, conocida como la "Ley de Municipios Autónomos de Puerto Rico", dicha pieza legislativa se aprobó con el fin ulterior de abandonar la visión hasta entonces imperante de que los municipios eran sólo proveedores de servicios simples. Así, se les delegó un mayor grado de autonomía fiscal y de gobierno propio, con el objetivo de que pudieran cumplir cabalmente con sus responsabilidades. Cónsono con ello, el Artículo 1.002 de dicha legislación reconoce la transferencia de poderes y facultades del Gobierno Estatal, con miras a que se puedan atender las necesidades de cada municipio en Puerto Rico. 21 LPRA sec. 4001 nota. De conformidad con lo anterior, se instituyó expresamente la autonomía municipal como el ejercicio de los poderes jurídicos, económicos y administrativos sobre asuntos relacionados con el bienestar general de los habitantes. 21 LPRA sec. 4004.

En línea con lo anterior, el Artículo 13.001 de esta ley establece que los municipios llevarán a cabo la organización de sus territorios mediante la adopción de Planes de Ordenación que incluirán estrategias y disposiciones para manejar el suelo urbano, convertir el suelo urbanizable en suelo urbano funcional y conservar el suelo rústico. 21 LPRA sec. 4601 nota. Los Planes de Ordenación son los planes que cada municipio desarrolla para regular el uso del suelo dentro de sus límites territoriales y promover el bienestar social y económico de su población. 21 LPRA sec.

---

[1] Desglosamos las disposiciones de la Ley Núm. 81-1991, según enmendada, por ser el estatuto que aplica al caso de autos, pues los documentos relacionados a la ordenación territorial del Municipio de Humacao se adoptaron durante su vigencia.

4601 (q). Estos incluyen tres planes, a saber: (1) Plan Territorial, (2) Plan de Ensanche y (3) Plan de Área. Íd. A su vez, aseguraran la protección del suelo, fomentan su uso equilibrado y eficiente, y facilitan el desarrollo integral de cada municipio. 21 LPRA sec. 4602. Una vez entre en vigor un Plan de Ordenación, se podrá delegar a los municipios algunas funciones de la Junta de Planificación y de la antigua Administración de Reglamentos y Permisos. 21 LPRA sec. 4601 nota. Asimismo, la Ley de Municipios Autónomos, *supra*, especifica que los referidos planes deberán estar **"de conformidad con todas las políticas públicas, leyes, reglamentos u otros documentos del gobierno central relacionados a la ordenación territorial y a la construcción"**. 21 LPRA sec. 4609. (énfasis suplido). **<u>Cabe aclarar que un Plan de Ordenación no es lo mismo que un Plan de Uso de Terrenos, ya que el primero es promulgado por el municipio y el segundo es un documento de política pública adoptado por la Junta de Planificación para determinar la distribución e intensidad de los usos del suelo</u>**. 21 LPRA sec. 4601.

Por otro lado, el Artículo 13.012 de esta ley dispone que los municipios pueden solicitarle al Gobernador(a) la transferencia de ciertas facultades sobre ordenación territorial a cargo de la Junta de Planificación, de la Oficina de Gerencias de Permisos y de la Oficina del Inspector General de Permisos, luego de aprobar su Plan Territorial. 21 LPRA sec. 4610. Las transferencias de estas facultades se conceden mediante niveles jerárquicos del uno (1) al cinco (5), que también abarcan los trámites incidentales a dichas facultades, tales como: (1) consultas, (2) autorizaciones para demoliciones, (3) traslados de estructura y (4) movimiento de tierra. Íd. En específico, la Jerarquía I y II incluye lo siguiente:

> (l) Permiso de uso para estructuras o solares existentes, conforme a la reglamentación vigente y que no requieran excepciones o variaciones en construcción. No incluye permisos que requieran variación en uso o intensidad, cuya facultad se reserva por las agencias públicas, según se establece más adelante en este Artículo.

[…]

(2)Autorizaciones de Anteproyectos, Permisos de Construcción (convencionales o por Ley de Certificaciones) y Permisos de Uso, todos éstos, en suelo urbano o urbanizable. Consideración de proyectos cuya área de construcción sea menor de mil (1,000) metros cuadrados, cuya altura no exceda cuatro (4) plantas y que esté conforme a la reglamentación vigente sobre uso e intensidad. Consideración, además, de obras de urbanización incidentales e inherentes a la construcción que se autoriza. Estos proyectos, para poder ser considerados por los municipios en esta jerarquía, estarán localizados en solares con cabida menor de mil quinientos (1,500) metros cuadrados.

(3) Autorización para segregar hasta diez (10) solares, incluyendo el remanente siempre que estén, conforme a los Planes de Ordenación. 21 LPRA sec. 4610 (a).

Del mismo modo, las Jerarquías III y IV otorgan las siguientes

facultades:

(1) Autorizaciones de Anteproyectos, Permisos de Construcción (convencionales o por Ley de Certificaciones), Permisos de Uso y Permisos para la instalación, ubicación y exhibición de rótulos y anuncios conformes a la reglamentación vigente. Consideración de proyectos cuya área de construcción sea menor de cinco mil (5,000) metros cuadrados, cuya altura no exceda cuatro (4) plantas, y que esté conforme a la reglamentación vigente sobre uso e intensidad. Consideración, además, de obras de urbanización incidentales e inherentes a la construcción que se autoriza. Estos proyectos, para poder ser considerados por los municipios en esta jerarquía, estarán localizados en solares con cabida menor de cuatro mil (4,000) metros cuadrados.

(2) Autorizaciones de Desarrollo Preliminares, Permisos de Construcción de Obras de Urbanización, y Autorización de Planos de Inscripción. Consideración de proyectos de urbanización de hasta cincuenta (50) solares, conforme a la reglamentación vigente.
(3) Enmiendas a los Planos de Ordenación. Consideración de solares con cabida no mayor de dos mil (2,000) metros cuadrados.
(4) Variaciones de uso y variaciones de intensidad en construcción, uso y densidad en solares urbanos o urbanizables de hasta un máximo de cuatro mil (4,000) metros cuadrados. 21 LPRA sec. 4610 (b).

Por su parte, la Jerarquía V transfiere las siguientes facultades, a

saber:

(l) Transferencia de otras facultades de la Oficina de Gerencia de Permisos y de la Junta de Planificación, **incluyendo las variaciones de uso y variaciones de intensidad en construcción o uso, los sistemas industrializados de construcción de impacto** subregional y todos los permisos para la instalación, ubicación y exhibición de rótulos y anuncios, exceptuando los relacionados a vías de comunicación que sean realizados con fondos federales, los reservados en el convenio, y los que se mencionan más adelante. 21 LPRA sec. 4610 (c) (énfasis suplido).

Es decir, la derogada Ley de Municipios Autónomos, *supra*, otorgaba a los municipios la capacidad de asumir ciertas responsabilidades, siempre y cuando hayan promulgado un Plan Territorial y cuenten con la aprobación del Gobernador(a). Estas facultades incluyen la emisión de permisos de uso para estructuras, enmiendas a los Planos de Ordenación y la autorización de variaciones en el uso del suelo e intensidad de construcción. Dichas disposiciones están diseñadas para mejorar el bienestar de los ciudadanos, permitiendo un desarrollo flexible y adaptado a las necesidades de cada comunidad.

**C.**

La Ley Núm. 75 de 24 de junio de 1975, según enmendada, conocida como "Ley Orgánica de la Junta de Planificación de Puerto Rico", fue promulgada con el objetivo general de "guiar el desarrollo integral de Puerto Rico de modo coordinado, adecuado, económico, el cual de acuerdo con las actuales y futuras necesidades sociales y los recursos humanos, ambientales, físicos y económicos, hubiere de fomentar en la mejor forma la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes". 23 LPRA sec. 62c. Así, para alcanzar estos propósitos se le concedió a la Junta de Planificación la facultad de adoptar las normas y los reglamentos que autoriza la ley, incluyendo Reglamentos de Zonificación y Lotificación. 23 LPRA sec. 62j.

En armonía con lo anterior, la Asamblea Legislativa aprobó la Ley Núm. 550- 2004, según enmendada, conocida como "Ley para el Plan de Uso de Terrenos del Estado Libre Asociado de Puerto Rico" (en adelante, "Ley para el Plan de Uso de Terrenos"), con el fin de promover la creación del Plan de Uso de Terrenos de Puerto Rico para que sirva de instrumento principal en la planificación de los terrenos basándose en un enfoque integral, la justicia social y la amplia participación de todos los sectores de la sociedad. 23 LPRA sec. 227. Así, se creó la Oficina del Plan de Uso de Terrenos, la cual es parte de la Junta de Planificación y es la encargada de

formular el Plan y sus documentos suplementarios. Íd. En lo aquí pertinente, el Artículo 13 de la mencionada ley establece lo siguiente:

> **Los planes regionales y los <u>planes municipales de ordenación territorial, establecidos bajo la Ley de Municipios Autónomos, según enmendada, deberán armonizar y ser compatibles con la política pública y con las disposiciones del Plan de Uso de Terrenos de Puerto Rico</u>** cuya preparación e implantación se requiere por virtud de esta Ley. 23 LPRA sec. 227j (énfasis suplido).

De las transcritas disposiciones estatutarias, se desprende que los Planes de Ordenación adoptados por los municipios, a la luz de las facultades reconocidas en la Ley de Municipios Autónomos, *supra*, deben **ser compatibles y estar en armonía con las disposiciones del Plan de Uso de Terrenos que promulgue la Junta de Planificación, garantizando así, una planificación ordenada y eficiente del desarrollo territorial**.

En cumplimiento con la antedicha ley, el 19 de noviembre de 2015, la Junta de Planificación aprobó el "Plan de Uso de Terrenos, Guías de Ordenación del Territorio" (en adelante, el "PUT- 2015"), Reglamento Núm. 8670 de 4 de diciembre de 2015 de la Junta de Planificación de Puerto Rico, el cual se utiliza para identificar los terrenos según su valor patrimonial, ecológico, agrícola, rural o urbano. PUT-2015, pág. 4. También tiene como propósito mejorar la coordinación en la planificación y el desarrollo de los esfuerzos realizados por las agencias del Estado, facilitar el desarrollo del territorio, promover un desarrollo equitativo y sostenible en Puerto Rico, entre otros objetivos. Íd.

Es menester destacar que este plan no otorga calificaciones de uso de terreno, **sino que simplemente clasifica, por lo tanto, no genera cambios en la calificación**. Íd., pág. 20. De acuerdo con el derogado Reglamento Conjunto para la Evaluación de Permisos Relacionados al Desarrollo y Usos de Terrenos del 24 de marzo de 2015, Reglamento Núm. 8573 de 24 de marzo de 2015 de la Junta de Planificación de Puerto Rico (en adelante, el "Reglamento Conjunto"), **clasificar significa ordenar el suelo entre tres (3) categorías básicas: (1) suelo urbano, (2) suelo**

**urbanizable y (3) suelo rústico, mientras que calificación se refiere al instrumento para designar usos de terreno**. Reglamento Conjunto, *supra,* Cap. 4(C)(7) y (88), respectivamente, págs. 35 y 44. De igual manera, el PUT-2015, *supra*, reconoce que existe una distinción entre clasificar y calificar el suelo y establece lo siguiente:

> Clasificar los terrenos es una acción para establecer categorías de suelo urbano, urbanizable y rústico, sabiendo que en el proceso posterior de elaborar o revisar los planes municipales o planes sectoriales se establecerán las calificaciones específicas con las intensidades y usos que se permitirán en cada una de las categorías.

> […]

> **A partir de las clasificaciones del suelo, establecidas en el Plan de Uso de Terrenos, se establecen las calificaciones**. Sin embargo, hay que recordar que son propuestas de distintos instrumentos de planificación que siempre están supeditados al Plan de Uso de Terrenos. PUT-2015, *supra*, págs. 119-120 (énfasis suplido).

Esto es, el referido Plan se concentra en clasificar los terrenos entre las (3) tres categorías previamente expuestas, sin asignar usos específicos a dichos terrenos. Por esta razón, el PUT-2015, *supra*, aclara que no puede ser considerado como una denegación de todo uso o todo uso económicamente razonable, ya que es solamente a través de la calificación que se pueden establecer suficientes restricciones a una propiedad para que puedan considerarse una afectación por la denegación de todo uso productivo. PUT-2015, *supra*, pág. 19. Ni las clasificaciones ni las calificaciones constituyen derechos adquiridos. Íd. La tarea de actualizar las calificaciones y clasificaciones corresponde tanto a la Junta de Planificación como a los municipios, quienes deben colaborar en conjunto para llevarlo a cabo. Íd.

En consonancia con lo anterior, el PUT-2015, *supra*, establece que "**los municipios deberán armonizar sus planes a lo dispuesto en este Plan. Además, toda revisión del plan de ordenación de los municipios deberá incorporar, para su aprobación, las políticas públicas del *Plan de Uso de Terrenos***" PUT-2015, *supra*, pág. 173 (énfasis suplido). En cuanto a las consultas de ubicación, especifica que aquellas vigentes al

entrar en vigor el plan se mantendrán vigentes, significando que el Plan no afectan ningún derecho adquirido. Íd. pág. 19 y 173.

**III.**

En el presente caso, los Apelantes nos solicitaron la revocación de la *Sentencia* del TPI mediante la cual se desestimó la "**Demanda**" incoada por éstos, tras concluir que el Plan de Ordenación Territorial del Municipio de Humacao es el que **predomina** sobre la zonificación adoptada por la Junta de Planificación.

Los dos señalamientos de error esgrimidos están íntimamente relacionados, por lo que se abordarán de manera conjunta en la discusión. En síntesis, los Apelantes alegan que el TPI erró al declarar "Con Lugar" la *Oposición* y sostener que el Plan de Ordenación Territorial del Municipio de Humacao predomina sobre el PUT-2015, ya que este último les reconoce las consultas de ubicación como derechos adquiridos. Veamos.

Conforme hemos adelantado en los acápites anteriores, procede dictar sentencia sumaria si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a algún hecho esencial y pertinente del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 679. Por consiguiente, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. Íd. Esto es, un tribunal no puede disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro de instancia. Este foro apelativo no tiene la facultad de decidir sobre los hechos materiales en disputa, ya que esa función le corresponde al TPI. Vera v. Dr. Vera, *supra*, pág. 335. Por lo tanto, nuestra labor se centra en determinar si existe una controversia real de hechos materiales y

esenciales y si se aplicó correctamente el derecho. Íd. Del análisis de *novo* de la prueba que se presentó ante el TPI, determinamos que sobre los siguientes hechos esenciales y pertinentes no existe controversia:

1. La parte querellante, Néctor Robles Abraham, su esposa Irma Morales García, y la Sociedad Legal de Gananciales compuesta por ambos, son mayores de edad, casados entre sí, él abogado de profesión y ella ama de casa, y residentes de Humacao, Puerto Rico. Su dirección es Palmas del Mar, 10 Ridge Top Dr., Humacao, Puerto Rico 00791-6059.

2. La entidad codemandante, INVERSIONES ROMONT, S.E., por conducto de su Presidente, Néctor Robles Abraham, entidad organizada de conformidad con las Leyes del Estado Libre Asociado de Puerto Rico, con capacidad para demandar y ser demandada; con dirección postal en el PO Box 516, Fajardo, Puerto Rico 00738.

3. La parte querellada, Municipio Autónomo de Humacao y la Oficina de Planificación de Municipio Autónomo de Humacao; con dirección física en la Casa Alcaldía Atanasio Martínez, Calle Miguel Casillas, Esquina Terminal Norte, Humacao, Puerto Rico; dirección postal: PO Box 178, Humacao, Puerto Rico 00792-0178; y teléfono (787) 852-3066, entidades municipales organizada de conformidad con las Leyes del Estado Libre Asociado de Puerto Rico, con capacidad para demandar y ser demandadas.

4. Para el 8 de febrero de 2008, se emitió el Boletín Administrativo OE Núm. 2008-06, para aprobar la primera revisión parcial del Plan de Ordenación Territorial del Municipio de Humacao.

5. La calificación de Conservación de Recursos Dos (CR-2) "identifica porciones de fincas cuyas características existentes deben mantenerse y mejorarse, tales como dunas, tramos de carreteras donde los árboles a ambos lados forman un túnel, porciones de fincas donde habitan especies de singular valor, márgenes de lagos y otros cuerpos de agua, áreas costeras de valor escénico y fajas de amortiguamiento adyacentes a un recurso de valor especial; áreas de cuevas, cavernas y sumideros; zona cársica y su flora, fauna y aguas subterráneas; bahías bioluminiscentes, bosques, salinas, dunas, ríos, lagos, lagunas, formaciones geológicas, parajes de extraordinaria belleza, refugios de flora y fauna, cascadas, manantiales, embalses, cuencas hidrográficas, nichos ecológicos (hábitat) de especies en peligro de extinción y otra áreas de especial interés."

6. La Junta de Planificación adoptó la Revisión Parcial del Plan Territorial de Humacao, mediante la Resolución JP-PT-51-4.

7. El 13 de abril de 1994, y notificada el 26 de abril de 1994, la Junta de Planificación autorizó la Consulta de Ubicación Núm. 93-51-0785-JPU para la creación de tres (3) predios de terrenos independientes con cabidas de 2,411.64, 2,412.25 y 2,412.11 metros cuadrados, respectivamente, al norte de la Carretera Estatal Núm. 3, km 82.4, en el Barrio Rio Abajo del Municipio de Humacao.

8. Mediante Resolución de Junta de Planificación de Acuerdo de 23 de noviembre de 1994, notificada el 12 de enero de 1995, la Junta de Planificación cambió la cabida de los solares y autorizó la Enmienda a la Consulta de Ubicación Núm. 93-51-0785-JPU, para cambiar la cabida de los solares a 2,386.3737, 2,368.00 y 2,483.6367.

9. El 11 de julio de 2001, la Junta de Planificación aprobó la Consulta de Ubicación Núm. 2000-51-0683-JPU mediante la cual le aprobó a la parte demandante un proyecto residencial mixto de treinta y cinco (35) unidades unifamiliares en solares con cabida mínima de ochocientos (800) metros cuadrados, y ciento cincuenta (150) apartamentos de tres (3) habitaciones tipo "walk-ups"; con facilidades recreativas, vecinales y áreas verdes. Los terrenos objeto de dicha consulta estaban comprendidos dentro de un Distrito R-1, según el Mapa de Zonificación del Municipio de Humacao.

Establecido lo anterior, nos dirigimos a analizar los señalamientos de error. Los Apelantes sostienen que la normativa aplicable al caso ante nuestra consideración es el PUT-2015 y no la Revisión Parcial al Plan de Ordenamiento Territorial del Municipio de Humacao. Veamos.

De entrada, debemos hacer hincapié en que los Apelados no cumplieron con las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, al no controvertir los hechos materiales y esenciales desglosados en la "**Solicitud de Sentencia Sumaria**" radicada por los Apelantes mediante la presentación de contradeclaraciones juradas y/o contradocumentos que pusieran en controversia los hechos presentados por los Apelantes. Es decir, los Apelados descansaron en meras afirmaciones contenidas en sus alegaciones y tomaron una actitud pasiva ante lo solicitado por los Apelantes. Oriental Bank v. Caballero García, *supra*, pág. 8.

Establecido lo anterior, nos adentramos a analizar los méritos del recurso, a la luz del estado de derecho aplicable.

Surge del expediente ante nuestra consideración que el 13 de abril de 1994, los Apelantes obtuvieron la Consulta de Ubicación Núm. 93-51-0785-JPU mediante la cual la Junta de Planificación acordó la creación de tres (3) predios de terreno.[2] Posteriormente, el 23 de noviembre de 1994, mediante *Resolución* de la Junta de Planificación se modificó la cabida de dichos terrenos y se autorizó una enmienda a la antedicha Consulta de Ubicación.[3]

Así las cosas, el 11 de julio de 2001, la Junta de Planificación le aprobó a los Apelantes la Consulta de Ubicación Núm. 2000-51-0683-JPU, a través de la cual les aprobó un proyecto residencial de treinta y cinco (35) unidades de viviendas en solares con cabida mínima de ochocientos (800) metros cuadrados, y ciento cincuenta (150) apartamentos de tres (3) habitaciones.[4] Varios años después, el 8 de febrero de 2008, el entonces Gobernador de Puerto Rico aprobó la Revisión Parcial del Plan Territorial del Municipio de Humacao. Finalmente, el 19 de noviembre de 2015, de conformidad con la Ley Núm. 550-2004, *supra*, la Junta de Planificación promulgó el PUT-2015.

Como se ha indicado anteriormente, la Ley para el Plan de Uso de Terrenos, *supra*, estipula específicamente que **los planes municipales de ordenación territorial deberán armonizarse y ser compatibles con las disposiciones del Plan de Uso de Terrenos de Puerto Rico que adopte la Junta de Planificación**. 23 LPRA sec. 227j. **Asimismo, el PUT-2015 subraya que la Junta de Planificación y los municipios deben colaborar para actualizar las calificaciones y clasificaciones de los planes, <u>asegurando su compatibilidad</u>**. PUT-2015, *supra*, pág. 19. Además, reafirma que todas las revisiones de los planes de ordenación de los municipios deben incorporar las políticas establecidas en el Plan de Uso de Terrenos. PUT-2015, *supra*, 173.

---

[2] *Véase*, <u>Apéndice del recurso de apelación</u>, págs.109-114.
[3] *Véase*, <u>Apéndice del recurso de apelación</u>, págs. 117-118
[4] *Véase*, <u>Apéndice del recurso de apelación</u>, pág. 114-230.

A la luz de los hechos materiales y esenciales desglosados anteriormente, nos corresponde determinar si el foro *a quo* aplicó correctamente el derecho. Meléndez González *et al.* v. M. Cuebas, *supra*, págs. 118-199. Contestamos en la negativa. Veamos por qué.

Tras un análisis exhaustivo y minucioso del expediente ante nuestra consideración, incluyendo la "**Solicitud de Sentencia Sumaria**", su *Oposición* y los documentos adjuntos, no podemos mantener la interpretación efectuada por el TPI a los efectos de que el Plan de Ordenación Territorial del Municipio de Humacao **predomina** sobre la zonificación adoptada por la Junta de Planificación. Lo anterior, equivaldría a ignorar la letra clara de varias piezas normativas que regulan el asunto ante nos. Conforme hemos adelantado en los acápites anteriores, el Artículo 13.011 de la derogada Ley de Municipios Autónomos, *supra*, dispone que los planes de ordenación territorial adoptados por los ayuntamientos **tienen que ser cónsonos con todas las políticas públicas, leyes, reglamentos u otros documentos del Gobierno Central relacionados a la ordenación territorial y a la construcción**. 21 LPRA sec. 4609.

En armonía con dicha disposición normativa, **la Ley para el Plan de Uso de Terrenos establece claramente que los planes de ordenación territorial deben ajustarse y ser compatibles con el Plan de Uso de Terrenos que promulgue la Junta de Planificación a esos efectos**. 23 LPRA sec. 227j. Este principio fue reiterado por la Junta de Planificación al aprobar el PUT-2015 y disponer **que los planes de ordenación emitidos por los municipios deben ser compatibles con sus disposiciones y con la política pública aprobada a esos fines**. Todo ello guarda lógica, puesto que los planes de uso de terrenos lo que establecen es la clasificación de éstos y a partir de las mismas, se establecen las calificaciones con las intensidades y usos que se permitirán en cada una de las categorías, de conformidad con el plan de ordenación territorial que aprueben los municipios. *Véase*, PUT-2015, *supra*, págs. 119-120.

Por consiguiente, a la luz de todo lo anterior, concluimos que el TPI erró al determinar que la Revisión Parcial del Plan de Ordenación Territorial del Municipio de Humacao **predomina** sobre la zonificación adoptada por la Junta de Planificación y proceder a desestimar la "**Demanda**" incoada por los Apelantes por dicho motivo. Avalar dicha determinación podría abrir la puerta para que los planes de ordenación territorial que adopten los municipios contravengan o no armonicen con las políticas de uso de los terrenos que implemente la Junta de Planificación de Puerto Rico.

Habiendo resuelto lo anterior, corresponde devolver el caso al foro primario para que determine lo siguiente: (1) si los Apelantes tienen un derecho adquirido, por vía de las Consultas de Ubicación Núms. 93-51-0785-JPU y 2000-51-0683-JPU, respectivamente; (2) si procede la acción de expropiación forzosa a la inversa, según alegado por los Apelantes; y (3) si se justifica la recalificación de las parcelas denominadas en esta *Sentencia* como A, B, C y D de Conservación de Recursos dos (CR-2) a Comercial Intermedio (C-I) y la recalificación de las parcelas denominadas en este dictamen como E, F y G de Conservación de Recursos dos (CR-2) a Residencial Intermedio (R-I), conforme al PUT-2015. **Todo lo anterior, debido a que la normativa vigente dispone específicamente que el Plan de Ordenación Territorial del Municipio de Humacao tiene que ser compatible y armonizable con el Plan de Uso de Terrenos adoptado por la Junta de Planificación en el 2015. Entiéndase, uno no predomina sobre el otro como lo concluyó el TPI en la *Sentencia* apelada. Procede, pues, que el Municipio de Humacao armonice su Plan de Ordenación Territorial a las disposiciones del Plan de Uso de Terrenos adoptado por la Junta de Planificación en el año 2015.**

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *revoca* la *Sentencia* apelada y se devuelve el caso al foro primario para que determine lo siguiente: (1) si los Apelantes tienen un derecho adquirido, por vía de las Consultas de Ubicación Núms. 93-51-0785-JPU y 2000-51-0683-JPU, respectivamente;

(2) si procede la acción de expropiación forzosa a la inversa, según alegado por los Apelantes; y (3) si se justifica la recalificación de las parcelas denominadas en esta *Sentencia* como A, B, C y D de Conservación de Recursos dos (CR-2) a Comercial Intermedio (C-I) y la recalificación de las parcelas denominadas en este dictamen como E, F y G de Conservación de Recursos dos (CR-2) a Residencial Intermedio (R-I), conforme al PUT-2015. Todo lo anterior, debido a que la normativa vigente dispone específicamente que el Plan de Ordenación Territorial del Municipio de Humacao tiene que ser compatible y armonizable con el Plan de Uso de Terrenos adoptado por la Junta de Planificación en el 2015. Entiéndase, uno no predomina sobre el otro como lo concluyó el TPI en la *Sentencia* apelada. Procede, pues, que el Municipio de Humacao armonice su Plan de Ordenación Territorial a las disposiciones del Plan de Uso de Terrenos adoptado por la Junta de Planificación en el año 2015.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones